UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00620-CHB-RSE

**ZORAN C.**                                                                                                              **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*[1]                       **DEFENDANT**

**REPORT AND RECOMMENDATION**

      The Commissioner of Social Security denied Zoran C.'s ("Plaintiff's") applications for disability insurance and supplemental security income benefits. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (DN 1). Both Plaintiff (DN 12) and the Commissioner (DN 16) have filed a Fact and Law Summary. The District Judge referred this case to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 11).

I.  Findings of Fact

      Plaintiff is 36 years old, lives with his mother in Louisville, Kentucky, and holds an associate's degree. (Tr. 212, 216). Plaintiff is presently unemployed but has past relevant work experience as a sales associate at HHGregg from July 2012 to January 2014 and a package handler at United Parcel Service ("UPS") from January 2004 to July 2012. (Tr. 263; Tr. 38–42). On August 25, 2014, Plaintiff protectively filed for disability insurance benefits ("DIB") under Titles II and

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3) ("Act"), and for supplemental security income ("SSI") benefits under Title XVI of the Act, alleging disability beginning on April 28, 2014. (Tr. 212; Tr. 214). Plaintiff claimed he could not perform work at substantial gainful levels due to back problems, including inappropriate disc extrusion or movement causing pressure on the left nerve root at lumbar 5 and extrusion on S1 nerve to the right. (Tr. 217). His applications were denied initially on November 18, 2014 (Tr. 120) and upon reconsideration on January 20, 2015 (Tr. 94). Upon Plaintiff's request, a hearing was conducted before Administrative Law Judge Teresa Kroenecke ("ALJ Kroenecke") on December 13, 2016. (Tr. 29–69). ALJ Kroenecke issued an unfavorable decision on February 17, 2017. (Tr. 10–23). Plaintiff appealed ALJ Kroenecke's decision, and after the Appeals Council declined review on February 12, 2018 (Tr. 1), Plaintiff sought judicial review. Shortly after, on April 19, 2018, Plaintiff filed a second set of DIB and SSI applications. (Tr 1909; Tr. 1918).[2]

On January 28, 2019, United States Magistrate Judge H. Brett Brennenstuhl reviewed ALJ Kroenecke's decision and determined it could not be meaningfully reviewed because she "offered nothing to support her conclusion" that Plaintiff did not meet Listing 1.04. (Tr. 1744, 1742). Judge Brennenstuhl therefore remanded the case for further proceedings. (Tr. 1745). In its remand order, the Appeals Council noted that Plaintiff's 2018 applications were duplicative of his 2014 applications and ordered that the claims be consolidated and a new decision on both claims issue. (Tr. 1749–52). A second hearing was conducted in Louisville, Kentucky before Administrative Law Judge Jeffrey Eastham ("ALJ Eastham") on October 15, 2019. (Tr. 2543–67). ALJ Eastham issued an unfavorable decision on December 11, 2019. (Tr. 1589–1604).

ALJ Eastham applied the traditional five-step sequential analysis promulgated by the

---

[2] These applications were also denied initially and upon reconsideration (Tr. 1760; Tr. 1766, 1773).

2

Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Plaintiff has not engaged in substantial gainful activity since April 28, 2014, the alleged onset date. (Tr. 1594). Second, Plaintiff has the severe impairments of degenerative disc disease status post lumbar decompression, obesity, and depression. (*Id.*). Third, none of Plaintiff's impairments or combination of impairments meets or medically equals the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 1595). ALJ Eastham then determined Plaintiff has the residual functional capacity ("RFC") to perform "sedentary work," as defined in 20 C.F.R. 404.1567(a) and 416.967(a), with the following limitations:

> He may occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs, but he may never climb ladders, ropes, or scaffolds; he must avoid concentrated exposure to extreme cold/heat and vibrations from equipment or tools being used to complete tasks, and hazards generally; he can have no exposure to unprotected heights, or use or be within 5 feet of open moving machine parts; he may never operate any type of motorized vehicle as part of a work task; he needs a cane to ambulate to and from workstation and on an occasional basis would be able to carry up to 10 pounds in free hand while ambulating; he can perform simple goal-oriented tasks, but may not perform production rate-pace tasks and no fast-paced daily quotas; he can understand and follow simple routine rote instructions and make simple routine decisions; he can have frequent work related contact with supervisors, coworkers, and the public, and can tolerate frequent changes in the work place setting.

(Tr. 1596–97). Fourth, ALJ Eastham found Plaintiff unable to perform any of his past relevant work. (Tr. 1602). Fifth and finally, considering Plaintiff's age, education, work experience, and RFC, ALJ Eastham determined there are jobs that exist in significant numbers in the national economy that he can perform. (*Id.*).

Based on this evaluation, ALJ Eastham concluded that Plaintiff was not disabled, as defined in the Social Security Act, from April 28, 2014 through the date of his decision. (Tr. 1603). Plaintiff sought review of ALJ Eastham's decision. (Tr. 1587). The Appeals Council declined

review on August 13, 2021. (Tr. 1578). At that point, the denial became the final decision of the Commissioner, and Plaintiff sought judicial review from this Court. (DN 1).

## II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## III. Conclusions of Law

Plaintiff raises two claims of error. First, Plaintiff argues ALJ Eastham erred at step three in finding he did not have a listing-level impairment. (DN 12, at PageID # 2619). Second, Plaintiff submits that ALJ Eastham's RFC determination is not supported by substantial evidence. (*Id.* at PageID # 2622). The Commissioner suggests ALJ Eastham's finding that Plaintiff did not meet or equal a listing complied with the regulations and considers Plaintiff's arguments meritless. (DN

16, at PageID # 2644). Likewise, the Commissioner offers that ALJ Eastham's RFC finding was "properly determined" and well-supported by the record evidence. (*Id.* at PageID # 2650).

### A. Step Three – Listed Impairment

A claimant must meet a substantial burden to demonstrate a listed impairment at step three. Listed impairments are considered by the Social Security Administration to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Reynolds v. Comm's of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011). To be considered disabled at step three, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir. 1987). "An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment." *Bluer v. Comm'r of Soc. Sec.*, No. 1:13-CV-22, 2014 WL 700424, at *4 (W.D. Mich. Feb. 24, 2014) (citing 20 C.F.R. §§ 404.1525(d); 416.925(d)). Because a claimant who meets the requirements of a listed impairment at step three will be deemed conclusively disabled and entitled to benefits, the burden on the claimant is high. *Robinson v. Comm'r of Soc. Sec.*, 426 F. Supp. 3d 411, 421 (E.D. Mich. 2019).

Plaintiff contends ALJ Eastham did not consider the record as a whole in determining he did not meet Listing 1.04. (DN 12, at PageID # 2619). He points to evidence he suggests demonstrates listing-level impairment, including physical therapy records revealing lumbar radiculopathy; treating surgeon notes evidencing significant discomfort, use of a cane, limited motion with increasing pain on leg extension, and a large disc herniation; and a consultative exam noting Plaintiff's cane use on uneven surfaces and ability only to walk short distances. (DN 12, at

PageID # 2621). Plaintiff criticizes ALJ Eastham for failing to rationalize why this evidence did not support a listed impairment, and specifically takes issue with his failure to do so at step three of the sequential evaluation process. (*Id.* at PageID # 2621–22). The Commissioner positions that ALJ Eastham supported his step three evaluation with substantial evidence, which included elaboration at step five, and that his decision must be read as a whole. (DN 16, at PageID # 2649).

To satisfy the requirements of Section 1.04, disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), a claimant's impairment must result "in compromise of a nerve root (including the cauda equina) or the spinal cord" with the following:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404. Subpt. P. App. 1, § 1.04. "Inability to ambulate effectively means an extreme limitation of the ability to walk." *Id.* at § 1.00(B)(2)(b)(1). In general, ineffective ambulation prevents "independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* Examples of ineffective ambulation include: "the

6

inability to walk without the use of a walker, two crutches or two canes, . . . the inability to use standard public transportation, [and] the inability to carry out routine ambulatory activities[.]" *Id.* at § 1.00(B)(2)(b)(2).

In determining whether Plaintiff met Listing 1.04, ALJ Eastham found that he does not have spinal arachnoiditis, and that the medical evidence does not establish an inability to ambulate effectively. (Tr. 1595). ALJ Eastham cited to the fact that Plaintiff "has mild strength loss but normal sensation and reflexes, and no evidence of persistent straight leg raise pain." (*Id.*). He also acknowledged that Plaintiff requires use of a quad-cane but noted Plaintiff could "use the cane with one hand while carrying with the free hand." (*Id.*). ALJ Eastham concluded Plaintiff's impairments did not reach listing level and stated "[a]ll these findings are discussed in greater detail below under Finding 5." (Tr. 1595).

Plaintiff suggests ALJ Eastham's statement that further discussion would follow at step five "create[d] two errors—one of fact and one of law." (DN 12, at PageID # 2619). According to Plaintiff, "[t]he review of facts at Step 5 to determine equaling a listing, a Step 3 determination, does not comply with the regulatory directive." (*Id.* at PageID # 2621). The Court first notes that ALJ Eastham did not err as a matter of law in discussing Plaintiff's impairments more in-depth at step five. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that when sufficient factual findings are made elsewhere, an ALJ need not "spell out every fact a second time"). Plaintiff claims the factual error committed by ALJ Eastham was his lack of "discussion in Finding 5 identifying what facts were considered to determine whether any listing was equaled." (DN 12, at PageID # 2619). But ALJ Eastham did in fact continue his discussion of Plaintiff's impairments and their limiting effects at step five, even revisiting the specific medical evidence relied upon in his step three determination. No such factual error exists.

7

ALJ Eastham's elaboration at step five notwithstanding, his analysis of the severity of Plaintiff's impairments at step three was sufficient on its own. A claimant does not satisfy a particular listing unless all the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir. 1987). Plaintiff believes ALJ Eastham failed to appropriately consider his ability to ambulate effectively because he simply stated that Plaintiff could use his free arm while using a cane. (DN 12, at PageID # 2620). Plaintiff also points to his need to be driven by his mother to do any shopping and the fact that his obesity compounds his pain and adds strain on his lumbar spine. (*Id.* at PageID # 2620–21). But as the Commissioner notes, ALJ Eastham considered Plaintiff's impairments in determining whether he may satisfy any one of the subparts of Listing 1.04. (*See* Tr. 1595). ALJ Eastham noted that Plaintiff did not demonstrate spinal arachnoiditis, which would eliminate a finding under 1.04B. *Id.* Finding that Plaintiff "has mild strength loss but normal sensation and reflexes, and no evidence of persistent straight leg raise pain," ALJ Eastham clearly considered and determined Plaintiff did not meet the criteria of 1.04A. *Id.* Lastly, ALJ Eastham noted that Plaintiff had not shown an inability to ambulate effectively, as required by 1.04C. *Id.*

Plaintiff nevertheless suggests Judge Brennenstuhl's remand order "was not complied with" and believes ALJ Eastham's analysis at step three was no more sufficient than ALJ Kroenecke's. (DN 12, at PageID # 2620). The Court disagrees. While ALJ Kroenecke cursorily proceeded through step three of the sequential analysis, simply stating, "[t]he medical evidence does not establish the existence of the above signs or symptoms even with the compounding impact of the claimant's obesity," ALJ Eastham thoroughly and properly determined that none of Plaintiff's impairments, alone or in combination, reached listing level. Plaintiff did not meet the substantial burden of demonstrating a listed impairment at step three, and ALJ Eastham did not err

in continuing through the sequential analysis.

## B. Step Five – Residual Functional Capacity

Plaintiff claims ALJ Eastham's residual functional capacity finding was erroneous because the record demonstrates "significant limitations on walking, sitting and standing[,] including pain." (DN 12, at PageID # 2622). The Commissioner counters that ALJ Eastham thoroughly considered the record evidence and found that while Plaintiff's limitations would only allow for sustained sedentary work, they were not disabling. (DN 16, at PageID # 2650).

The residual functional capacity finding is the administrative law judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The administrative law judge bases her residual functional capacity finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In addition to considering medical records and physician opinions in forming their RFC, ALJs must assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

Plaintiff suggests his medical history supports a disability finding, citing to treatment records demonstrating only mild improvement over time with continued discomfort. (DN 12, at PageID #2623–25). Plaintiff does not, however, point to any evidence ALJ Eastham failed to consider. He simply suggests ALJ Eastham should have reached a different conclusion based on the record evidence. It is well settled that an administrative law judge's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). ALJ Eastham acknowledged Plaintiff's subjective complaints of low back pain with radiating symptoms into his leg, his inability to sit or stand for more than fifteen minutes at a time before needing to change

9

positions, and his full body muscle spasms. (Tr. 1598). ALJ Eastham also noted Plaintiff's "severe degenerative disc disease of the lumbar spine." (*Id.*). He discussed Plaintiff's ongoing treatment for this impairment, and noted "[t]o date, the claimant continues to complain of low back pain and he uses a cane when attending some treatment sessions." (*Id.*).

ALJ Eastham also recognized that Plaintiff's obesity compounded his pain, but that recent records showed he was able to lose weight. (*Id.* at PageID # 1598–99). Having developed a severely restricted RFC, ALJ Eastham determined "the longitudinal record supports that no additional limitations are needed." (Tr. 1599). In support, ALJ Eastham cited to radiographic studies taken around Plaintiff's alleged onset date that showed "well-maintained disc height and disc space with no significant bony abnormality," "full extremity strength and no evidence of foot drop" as of October 2014, and only minor back and leg pain that was treated with a steroid pack following Plaintiff's first surgery. (*Id.*). ALJ Eastham further noted that since his initial surgery, Plaintiff treated with injections and therapy and "was doing well on his current medication regimen" but did begin seeking chiropractic care and further treatment from his neurologist due to pain. (*Id.*). ALJ Eastham also recognized that worsening leg and back pain in September 2014 ultimately led to additional surgery, which provided Plaintiff some relief. (*Id.*). Noting Plaintiff's lengthy recovery, ALJ Eastham crafted a detailed RFC that provided for "the most restrictive exertional level" to accommodate Plaintiff's ongoing leg and back pain. (*Id.*). ALJ Eastham's assessment of the medical evidence was thorough and well-articulated.

As for opinion evidence, Plaintiff briefly asserts that ALJ Eastham should have given greater deference to his treating surgeon Dr. Kimithi Doss's findings and less to state agency consultant Dr. Robert Brown's findings. The regulations applicable to claims for disability benefits filed on or after March 27, 2017, i.e., the new regulations, changed the way the Commissioner

considers medical opinion evidence. Because Plaintiff's claims were protectively filed before March 27, 2017, the "old regulations" apply. The old regulations established a hierarchy of acceptable medical source opinions. *Hollon v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 577, 582 (S.D. Ohio 2015). Treating physicians top the hierarchy. *Id.* Examining physicians, who often see and examine a claimant only once, are next in the hierarchy, followed by non-examining physicians' opinions at the bottom. *Hollon*, 142 F. Supp. 3d at 582.

The so-called "treating physician rule" requires a treating physician's opinion be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404. 1527(c)(2). An ALJ is required to give "good reasons" for the weight assigned to a treating source's medical opinion. *Id.* Under the old regulations, "only 'acceptable medical sources' [could] be considered treating sources . . . whose medical opinions may be entitled to controlling weight." Social Security Ruling 06-03p, 2006 WL 2329939, at *2 (citing 20 C.F.R. § 404.1527(c)(2)).

Opinions from non-treating sources, like examining or non-examining physicians, are never assessed for controlling weight; instead, they are evaluated using the factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These factors include the examining relationship (or lack thereof), specialization of the physician, consistency of the medical opinion with the record, and supportability of the opinion. 20 C.F.R § 416.927(c)(1)-(6). An exhaustive factor-by-factor analysis is not required to comply with the regulations. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).

In evaluating Dr. Doss's treating opinion, ALJ Eastham determined there was "insufficient support" for her suggested limitations in reaching, handling, fingering, or feeling because Plaintiff

11

"does not have a severe impairment impacting the cervical spine or upper extremities, such as carpal tunnel syndrome, and as he has not shown any decreased grip strength." (Tr. 1600). ALJ Eastham cited to MRI results of the cervical spine, which "showed only mild degeneration at C4-5 and C5-6" and lack of "disc protrusion or herniation, significant stenosis, or cord compromise." (*Id.*). ALJ Eastham further found there was "insufficient evidence for a breathing impairment to warrant restrictions from pulmonary irritants," rendering Dr. Doss's opinion less supported by other objective medical evidence. (*Id.*). Lastly, ALJ Eastham noted the record generally showed "normal lower extremity strength and sensation" and "improvements from treatment such that [Plaintiff] is able to sit, stand, and walk throughout the day so long as he has his cane and can alternate positions." (*Id.*). He therefore declined to give Dr. Doss's opinion controlling weight because it contradicted much of the medical evidence in Plaintiff's record. ALJ Eastham did, however, include "postural and environmental restrictions" to account for Plaintiff's ability to kneel, crouch, or crawl, consistent with Dr. Doss's opinion. (*See* Tr. 1596). The undersigned finds no error in ALJ Eastham's evaluation of Dr. Doss's opinion, as it was only partially supported by the record as a whole.

Plaintiff also criticizes ALJ Eastham's partial reliance on state agency consultant Dr. Brown's findings because he "did not have the record as a whole available" when he assessed Plaintiff's case. (DN 12, at PageID # 2629). "[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts.'" *See Durard v. Comm'r of Soc. Sec.*, No. 5:20-CV-00102-LLK, 2021 WL 467208, *2 (W.D. Ky. Feb. 9, 2021) (quoting *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493-94 (6th Cir. 2008)). Dr. Brown opined that Plaintiff could perform light work with additional limitations, and ALJ Eastham explicitly stated

12

that "subsequent [] state agency medical consultants opined the claimant could perform only sedentary work," which ALJ Eastham found more persuasive "due to ongoing mild strength loss in the right leg and back pain." Thus, ALJ Eastham clearly considered later-submitted evidence and discounted Dr. Brown's more remote opinion accordingly. The undersigned finds no error.

While evidence may exist that would support a different finding, ALJ Eastham's consideration of the record was thorough, and his RFC determination was supported by substantial evidence. Plaintiff has pointed to no contrary evidence that ALJ Eastham failed to consider, and the Court does not recommend remand.

## RECOMMENDATION

For the above-stated reasons, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED.**

## NOTICE

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:    Counsel of Record