UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| ZORAN C.[1], | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 3:21-cv-00620-CHB-RSE |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| COMMISSIONER OF SOCIAL | ) | **ORDER ADOPTING REPORT AND** |
| SECURITY, | ) | **RECOMMENDATION** |
| | ) | |
| Defendant. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Zoran C. ("Claimant") filed this action seeking review of the final decision by the Commissioner of Social Security (the "Commissioner") denying Claimant's applications for Social Security Insurance Benefits ("SSI") and Disability Insurance Benefits ("DIB"). [R. 1]. The case was referred to United State Magistrate Judge Regina S. Edwards for a report and recommendation. [R. 11]. On July 29, 2022, the Magistrate Judge issued her Report and Recommendation (the "R&R") in which she recommends that the final decision of the Commissioner be affirmed. [R. 17]. Claimant timely filed an objection to the R&R, [R. 18], and the Commissioner responded. [R. 19]. This matter is now ripe for review.

## I.    BACKGROUND

On August 25, 2014, Claimant filed protective applications for DIB and SSI, alleging that he was disabled as of April 28, 2014 due to "[b]ack problem" and "disk extrusion or movement thr[ough] a space it normally would not belong, causing pressure on the left nerve root at lumbar 5 and extrusion on S1 nerve to the right." [Administrative Record ("AR"), pp. 201, 217]. The applications were denied initially on November 12, 2014, *id.* at 101–02, and on January 13, 2015,

---

[1] Pursuant to General Order 22-05, the Plaintiff in this case is identified and referenced solely by first name and last initial.

- 1 -

they were denied on reconsideration. *Id.* at 118–19. On December 13, 2016, Administrative Law

Judge ("ALJ") Teresa Kroenecke conducted a hearing on Claimant's applications. *Id.* at 31–69.

During the hearing ALJ Kroenecke heard testimony from Claimant, who was assisted by counsel,

and from vocational expert Courtney Stiles. *Id.* In a decision dated February 17, 2017, ALJ

Kroenecke engaged the five-step sequential evaluation process promulgated by the Commissioner

to determine whether an individual is disabled. *Id.* at 15–22. In doing so, she made the following

findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since April 28, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the seve1ity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he needs to alternate between a sitting and standing/walking position every 30 to 45 minutes for 2 to 3 minutes at the workstation and he requires a cane to ambulate. He may occasionally stoop, balance, crouch, and climb ramps and stairs, but he may not operate foot controls, kneel, crawl, or climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to wetness, humidity, vibrations, and hot and cold temperature extremes. He must avoid all exposure to hazards such as heights and dangerous machinery.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was . . . 28 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work expe1ience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 28, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.*

On February 12, 2018, the Appeals Council denied Claimant's request for review, rendering ALJ Kroenecke's decision the final decision of the Commissioner. *Id.* at 1. Claimant subsequently filed a complaint in this Court seeking judicial review of ALJ Kroenecke's decision. *Id.* at 1735. In a memorandum opinion and order dated January 28, 2019, United States Magistrate Judge H. Brent Brennenstuhl found that the record raised "a substantial question as to whether [Claimant] could qualify as disabled under" Listing 1.04 and that "the ALJ failed to actually evaluate the evidence, compare it to this listing, and give an explained conclusion in order to facilitate meaningful review." *Id.* at 1742. Accordingly, Magistrate Judge Brennenstuhl reversed ALJ Kroenecke's decision and remanded the case for further proceedings.[2] *Id.* at 1744.

---

[2] In that action, the parties had consented to the jurisdiction of Magistrate Judge Brennenstuhl pursuant to 18 U.S.C. § 636(c) to enter final judgment in the case with direct review by the Sixth Circuit Court of Appeals in the event an appeal were to be filed. [AR, p. 1735].

Meanwhile, on April 19, 2018, Claimant filed renewed applications for SSI and DIB. *Id.* at 1909, 1916. These applications were denied initially on July 13, 2018, *id.* at 1760, and on reconsideration on September 24, 2018. *Id.* at 1766. Upon receipt of Magistrate Judge Brennenstuhl's remand order on May 24, 2019, the Appeals Council vacated ALJ Kroenecke's decision and consolidated the 2014 applications and the 2018 applications as duplicate claims. *Id.* at 1749, 1751. On October 15, 2019, ALJ Jeffrey Eastham conducted a hearing on Claimant's applications. *Id.* at 2543–67. During the hearing, ALJ Eastham heard testimony by Claimant, who was assisted by counsel, and by vocational expert Sharon Lane. *Id.* In a decision dated December 11, 2019, ALJ Eastham engaged the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled. *Id.* at 1594–1604. In doing so, he made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since April 28, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease status post lumbar decompression, obesity, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he may occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs, but he may never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to extreme cold/heat and vibrations from equipment or tools being used to complete tasks, and hazards generally.

However, he can have no exposures to unprotected heights or use of or within 5 feet of open moving machine parts. He may never operate any type of motorized vehicle as part of work task. He needs a cane to ambulate to and from workstation and on an occasional basis would be able to carry up to 10 pounds in free hand while ambulating. He can perform simple goal oriented tasks. He may not perform production rate pace tasks and no fast-paced daily quotas. He can understand and follow simple routine rote instructions. He can make simple routine decisions. He can have frequent work related contact with supervisors, coworkers, and the public. He can tolerate frequent changes to the work place setting.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was . . . 28 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 28, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 1594–1603.

On August 13, 2021, the Appeals Council denied Claimant's request for review, rendering ALJ Eastham's decision the final decision of the Commissioner. *Id.* at 1578. On October 8, 2021, Claimant timely filed this action. [R. 1].

## II.      STANDARD OF REVIEW

When a party objects to a report and recommendation, the Court reviews *de novo* only those portions of the report to which objection is made. 28 U.S.C. § 636(b)(1)(C). The Court may adopt without review any portion of the report to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). On review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review *de novo* the portions of the Magistrate Judge's R&R to which Claimant objects.

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

## III.     DISCUSSION

### A.  The Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2021). In summary, the evaluation process proceeds as follows:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

4. Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5.  Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### B.  Claimant's Step 3 Objection

Claimant challenges ALJ Eastham's finding at step three of the five-step evaluation process. [R. 18, at pp. 1–4]. At step three, the ALJ considers whether the claimant has an impairment that satisfies the criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, which

are generally referred to as the "Listings." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "[A] claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009). A claimant's impairment satisfies a Listing only when the claimant manifests the specific requirements described in the Listing's medical criteria. 20 C.F.R. §§ 404.1525(d), 416.925(d) (2021). To meet the requirements of a listed impairment or its equivalent, a claimant must demonstrate specific findings that duplicate the enumerated criteria of the listed impairment. *Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529 (6th Cir. 2006); *see also Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency."). The claimant bears the burden of proving his or her impairment satisfies all the specified criteria in a given Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Here, at step three, ALJ Eastham considered whether Claimant's impairments meet or medically equal the requirements under Listing 1.04 Disorders of the Spine. [AR, p. 1595]. To meet Listing 1.04, a claimant's impairment must "result[] in compromise of a nerve root (including the cauda equina) or the spinal cord" and satisfy one of the following criteria:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

- 8 -

> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt A1, § 1.04 (2019).[3]

Here, ALJ Eastham made direct findings that Claimant did not satisfy the Listing criteria under 1.04A, 1.04B, or 1.04C. Specifically, ALJ Eastham set forth his analysis of Listing 1.04 as follows:

> He does not have spinal arachnoiditis. The medical evidence does not establish that the claimant has an inability to ambulate effectively. He has mild strength loss but normal sensation and reflexes, and no evidence of persistent straight leg raise pain. While he requires use of a quad-cane, he can use it with one hand while carrying with the free hand. All these findings are discussed in greater detail below under Finding 5

[AR, p. 1595].

As the Magistrate Judge found in her R&R, "ALJ Eastham noted that Plaintiff did not demonstrate spinal arachnoiditis, which would eliminate a finding under 1.04B," and in "[f]inding that Plaintiff 'has mild strength loss but normal sensation and reflexes, and no evidence of persistent straight leg raise pain,' ALJ Eastham clearly considered and determined Plaintiff did not meet the criteria of 1.04A." [R. 17, p. 8]. Finally, based on these same overall normal indications, as well as his ability to use a cane "with one hand while carrying with the free hand," [AR, p. 1595], ALJ Eastham found that Claimant did not lack the ability to ambulate effectively as required

---

[3] The Social Security Administration revised the Listing criteria for disorders of the spine in 2021. Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 3, 2020). Rather than the revised Listing, the Listing that applies to Claimant's applications is the version cited above, which was in effect at the time of Claimant's SSI and DIB applications and the ALJ's decision. *See Bowman v. Comm'r of Soc. Sec.*, 683 F. App'x 367, 371 n.2 (6th Cir. 2017); 85 Fed. Reg. 78164-01, n.2 ("[W]e will use these final rules on and after their effective date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

under 1.04C. Therefore, ALJ Eastham's analysis at step three sufficiently addressed each of the criteria under 1.04A, 1.04B, and 1.04C to support his finding that Claimant did not meet the Listing.

In addition to his direct evaluation Claimant's ability to meet Listing 1.04, at step three, ALJ Eastham addressed medical equivalence to the Listings. An ALJ will find that an impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a) (2021). Medical equivalence can be found in one of three ways:

(1) (i) If [the claimant has] an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but —

(A) [the claimant does] not exhibit one or more of the findings specified in the particular listing, or

(B) [the claimant] exhibit[s] all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

(ii) [The ALJ] will find that [the claimant's] impairment is medically equivalent to that listing if [the claimant has] other findings related to [the claimant's] impairment that are at least of equal medical significance to the required criteria.

(2) If [the claimant has] an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, [the ALJ] will compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the ALJ] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing.

(3) If [the claimant has] a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 416.925(c)(3)), [the ALJ] will compare [the claimant's] findings with those for closely analogous listed impairments. If the

> findings related to [the claimant's] impairments are at least of
> equal medical significance to those of a listed impairment, [the
> ALJ] will find that [the claimant's] combination of impairments
> is medically equivalent to that listing.

20 C.F.R. §§ 404.1526(b), 416.926(b); Social Security Ruling ("SSR") 17-2p, 2017 WL 3928306,

at *3–4 (March 27, 2017) (summary of the three ways the Social Security Administration can find

medical equivalence).

Here, contrary to Claimant's contention that ALJ Eastham's analysis was narrowly

confined to whether Claimant met the Listing and "did not consider the record as a whole to

determine if Listing 1.04 was **equaled**," [R. 18, p. 1] (emphasis in original), at step three, ALJ

Eastham specifically found that Claimant's impairments did not "meet[] or *medically equal*[]" the

Listings and clarified that his "findings are discussed in greater detail below under Finding 5."

[AR, p. 1595] (emphasis added). Later in the decision under Finding 5, ALJ Eastham summarized

Claimant's allegations concerning the severity of his spine impairment:

> At the final hearing, the claimant testified that he suffered from low
> back pain with radiating symptoms into his leg. He presented using
> a quad cane stating that he uses it outside of the house mainly for
> muscle spasms in his back . . . He had previously tried physical
> therapy and chiropractic care per his testimony. As a result of his
> impairment, he stated that he does not perform yard work or
> activities such as mopping sweeping, or vacuuming. He admitted
> that he can clean up after dinner, wash dishes, and prepare simple
> meals. He grocery shops weekly, but he accompanies his mother
> because he does not drive. He stated that he cannot sit or stand for
> more than 15 minutes at a time before needing to change positions.
> He also testified to having full body muscle spasms.

*Id.* at 1598.

ALJ Eastham compared Claimant's allegations with the medical evidence bearing on the

severity of his impairment. *Id.* at 1598–99. Based on the record, ALJ Eastham limited Claimant to

sedentary work and "affords the claimant use of a cane to ambulate but notes there are no

corresponding findings of decreased leg sensation, or evidence of foot drop to suggest the need for greater limitations in this area (15F, 21F, 23F)." *Id.* at 1599. These portions of ALJ Eastham's respective step three and RFC analyses sufficiently demonstrate that he considered the question of medical equivalence. *See* SSR 17-2p, at *4[4] (providing that "a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding" and that an ALJ's "articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."). *See also Davis v. Comm'r of Soc. Sec.*, No. 18-13576, 2019 WL 6208732, at *6 (E.D. Mich. Oct. 31, 2019), *report and recommendation adopted*, No. 18-13576, 2019 WL 6173802 (E.D. Mich. Nov. 20, 2019) ("[U]nder SSR 17-2p, the court must look at the ALJ's step three discussion as well as later portions of the decision to determine the basis for the step three

---

[4] SSR 17-2p, which replaced SSR 96-6p effective March 27, 2017, was promulgated after Claimant filed his SSI and DIB applications on August 25, 2014. "[F]ederal district courts are split as to whether ALJs should apply SSR 96-6p or 17-2p to social security claims filed before March 27, 2017." *McCarthy v. Berryhill*, No. 18-CV-02800-CMA, 2020 WL 2079185, at *3 (D. Colo. Apr. 30, 2020) (collecting cases). However, the Commissioner applies SSR 17-2p even to applications filed before its March 27, 2017 effective date. *Hearing and Appeals Law and Litigation Manual* ("HALLEX") I–5–3–30, 2017 WL 1362776, at *5 (2017) ("For claim(s) filed before March 27, 2017, cite the following authorities instead of the four rescinded SSRs . . . SSR 17-2p . . . ."). Here, neither party argues that SSR 96-6p applies to Claimant's applications. Therefore, consistent with HALLEX and several decisions rendered by courts in this circuit, the Court cites SSR 17-2p as applicable to Claimant's applications. *See Webb o/b/o C.E. v. Comm'r of Soc. Sec.*, No. 2:20-CV-12004, 2021 WL 7005401, at *8 n.7 (E.D. Mich. Aug. 12, 2021), *report and recommendation adopted in part sub nom. Webb o.b.o. C.E. v. Saul*, No. 20-12004, 2022 WL 386023 (E.D. Mich. Feb. 8, 2022) (citing *Balknight v. Comm'r of Soc. Sec.*, No. 18-11843, 2019 WL 4011881, at *26 (E.D. Mich. July 31, 2019) and *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 224 (1988) (noting that in *Balknight*, the Eastern District of Michigan "recognized that SSR 17-2p has retroactive effect" and citing *Bowen* as supporting that finding); *Thomas o/b/o C.T. v. Berryhill*, No. 18-2467-TLP-TMP, 2019 WL 7580293, at *9 (W.D. Tenn. Nov. 7, 2019), *report and recommendation adopted sub nom. Thomas v. Comm'r of Soc. Sec.*, No. 2:18-CV-02467-TLP-TMP, 2020 WL 214754 (W.D. Tenn. Jan. 14, 2020) ("By stating that ALJs should cite to SSR 17-2p, not SSR 96-6p, for claims filed before March 27, 2017, HALLEX has established that SSR 96-6p is not a part of the prior rules."). *See also Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008), as amended ("While not binding on this court, the procedural guidance to the staff and adjudicators of the Office of Hearings and Appeals set forth in the HALLEX bolsters [the court's] interpretation [of the Social Security regulations].").

finding."). Moreover, as is discussed further below, ALJ Eastham's findings in his RFC analysis support his conclusion that Claimant does not meet or medically equal the Listing.

Next, Claimant argues that ALJ Eastham's step three analysis "did not resolve conflicts in the evidence that contradicted his conclusions nor explained [sic] the reasoning on rejecting evidence that detracted from his conclusions." [R. 18, at pp. 2–3] (citation omitted). The regulations do not set forth a minimum articulation standard that the ALJ must meet in analyzing the relevant Listings. However, the Sixth Circuit has held that an ALJ must "actually evaluate the evidence, compare it to . . . the [relevant] Listing, and give an explained conclusion, in order to facilitate meaningful judicial review."[5] *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). This is not a heightened articulation standard. Indeed, the Sixth Circuit has also acknowledged that the applicable regulations only require the ALJ to consider whether the Listings are applicable and do not require, for example, that the ALJ provide "good reasons" as in the context of the former treating physician rule. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(3), (a)(4)(iii) and *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), *as amended*); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). Nor do the regulations require the ALJ to explain how he or she considered particular factors is the case under the new regulations applicable to opinion evidence. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2021) (providing that "we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision"). *See also Cashin*, 2022

---

[5] Claimant cites *Tyra v. Sec'y of Health & Hum. Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990) as supporting his challenge to the ALJ's explanation at step three. [R. 18, p. 4]. How *Tyra* advances Claimant's position is not apparent to the Court. The case contains no discussion of the level of detail in which an ALJ must discuss his conclusions and does not involve a challenge to an ALJ's analysis of whether a claimant met a particular Listing. Accordingly, the undersigned finds that the proper standard is articulated in *Reynolds* and its progeny as set forth above.

WL 4595067, at *3 ("The ALJ's discussion is brief, but it satisfies the burden established in *Reynolds*[.]"). In several unpublished decisions, the Sixth Circuit has found that a court may properly look to the ALJ's analysis elsewhere in the decision to assess what the ALJ considered at step three. *Bledsoe*, 165 F. App'x at 411 ("The mere failure to discuss every single impairment under the step three analysis is not a procedural error."); *Forrest*, 591 F. App'x at 366 ("[T]he ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three."); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 435 (6th Cir. 2014) ("It also is proper to consider the ALJ's evaluation . . . at other steps of his decision . . . ."); *Robinson v. Comm'r of Soc. Sec.*, 426 F. Supp. 3d 411, 423 (E.D. Mich. 2019) (citing *Bledsoe*, 165 F. App'x at 411) ("[F]ailure to properly articulate Step Three finding can be cured by a discussion of the evidence supporting the finding at earlier or subsequent steps in the sequential analysis."). *But see Harvey v. Comm'r of Soc. Sec.*, No. 16-3266, 2017 WL 4216585, at *6 (6th Cir. Mar. 6, 2017) (noting that while the district court looked elsewhere in the ALJ's opinion to see what medical evidence the ALJ had cited, "[t]he district court should not have speculated what the ALJ may have concluded had he considered the medical evidence under the criteria in Listing 1.02").

Here, the Court need not speculate as to how ALJ Eastham considered the medical evidence in making his step three determination; as was discussed above, ALJ Eastham set forth the criteria under Listing 1.04, discussed some of the relevant medical evidence, articulated specific findings with respect to elements of the listed criteria, and concluded that "claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." [AR, p. 1595]. Thus, ALJ Eastham's discussion at step three satisfies the articulation standard set forth in *Reynold*. Further, ALJ Eastham's findings at step three are bolstered by the more detailed discussion later in the decision. In addition to his analysis at step

three, ALJ Eastham thoroughly reviewed the evidence bearing on the Listing criteria in his RFC

analysis and, contrary to Claimant's argument, explained how he reached his findings, including

his consideration of conflicting evidence. [AR, pp. 1598–1602]. There, ALJ Eastham reviewed the

medical evidence bearing on the functional limitations caused by Claimant's spine impairment:

> Around the claimant's alleged onset date, he sought treatment for
> complaints of low back pain without radiating symptoms into the
> lower extremities (1F). Several months later, around September
> 2014, the claimant began complaining of pain radiating into the right
> leg at the S1 distribution (3F). Updated objective studies confirmed
> a disc protrusion at L4-5 and a large disc herniation at L5-S1 causing
> marked compression of the S1 nerve root (3F, 4F). The claimant
> presented with a cane to assist with ambulation during this time (3F,
> 5F).

*Id.* at 1598. ALJ Eastham noted on the other hand that "[r]adiographic studies taken around his

alleged onset date showed well-maintained disc height and disc space with no significant bony

abnormality (1F)." *Id.* ALJ Eastham noted that "the claimant required back surgery in January of

2015 as he testified (19F)." *Id.* He also noted that "[n]eurologic examinations prior to surgery

showed normal reflexes, strength, and sensation, even when the claimant began complaining of

radicular type symptoms" and that upon examination in October 2014, "claimant had full extremity

strength and no evidence of foot drop (5F)." *Id.* at 1599. ALJ Eastham noted that Claimant

"reported initial improvement from surgery, [but] subsequently complained of a return of low back

and leg pain and he began using a cane to ambulate again (14F)." *Id.* at 1598. He noted that

"[u]pdated studies of the lumbar spine showed a recurrent L4-5 protrusion and scar tissue at L5-

S1, causing impingement of the nerve root (22F)." *Id.* He recounted,

> Following surgery, the claimant reported some minor back and leg
> pain but it was relieved with a steroid pack. He also reported benefit
> from muscle relaxers. Overall, he felt his symptoms had improved
> since surgery and the cane was used more for comfort (12F). The
> physical findings support his subjective reports of improvement as
> the providers noted he had a normal gait and he continued to have
> routinely normal neurologic findings including strength and

sensation (12F, 27F) . . . The claimant did present to his lumbar spine specialists using a cane only intermittently, and updated studies from June of 2016 showed a recurrent L4-5 protrusion and scar tissue at L5-S1, causing mild impingement of the nerve root (22F). However, neurology records from 2019 indicate the claimant has been doing well and that follow up imaging showed scar tissue but no significant nerve root compression (37F).
. . .
Regarding his level of treatment since surgery, the claimant treated with injections and therapy (24F, 25F). While he reported limited benefit from injections, his therapists noted good response to maneuvers (13F, 15F, 23F). The physiotherapy notes indicate he had a good prognosis. There was some decreased strength noted by therapists, not by the medical providers, and it was only slightly/mildly reduced at 4 or 5- out of 5 (16F, 18F, 24F). Records from 2016 and 2017 indicate the claimant was doing well on his current medication regimen (27F). More recently he sought chiropractic care (30F). The notes describe ongoing reduced motion and muscle spasms, but they also indicate the claimant is experiencing fair to good prognosis with improvement in functioning, and maintaining progress toward goals (30F, 31F). Outside of chiropractic treatment, he sought limited treatment for his back pain, including treatment from his neurologist in 2018 and 2019.

*Id.* at 1599.

ALJ Eastham observed that "[t]o date, the claimant continues to complain of low back pain and he uses a cane when attending some treatment sessions." *Id.* at 1598. ALJ Eastham found that Claimant's "weight places additional strain on his lumbar spine, though it appears from the most recent records that he has been able to lose weight." *Id.* at 1598–99. ALJ Eastham concluded,

Thus, the overall record indicates the claimant experienced a worsening of back and leg pain around September of 2014 sufficient to proceed with surgery, which did provide some relief. While recovery has been slow, the above RFC provides the most restrictive exertional level, reduced even further to accommodate ongoing leg and low back pain.

*Id.* at 1599.

With that background in mind, the Court turns to Claimant's argument. Claimant points to a treatment note from his neurologist dated April 14, 2015 which indicates, among other things,

that Claimant reported minor back and leg pain, showed +1 patellar reflexes bilaterally. [R. 18, at p. 2] (citing [AR, pp. 482–83]). Claimant's provider noted that "his symptoms have improved since surgery, and could be secondary due to inflammation." [AR, p. 483]. Claimant contends that this evidence "contradicts the ALJ's conclusion about normal [neurologic] findings" after his surgery. [R. 18, at p. 2]. Claimant also points to physical therapy records dated May 4 and June 4, 2015 which indicate, among other things, that Claimant reported his current pain level at 3/10. [R. 18, at p. 2] (citing [AR, pp. 499–500, 534]). During the May 4 visit, Claimant reported that at its worst, his pain level reaches 5/10, and on June 4, that level improved to 4/10. [AR, p. 499]. Claimant characterizes these findings as "little change [in] reduction in pain" and states that the records show "the same findings of limited ability in sitting, standing, ambulation, showering, sleeping and limited joint ranges of motion." [R. 18, at p. 2]. Claimant argues that this evidence undermines ALJ Eastham's finding of improvement after the surgery "and further contradicts his conclusion of normal findings." *Id.* at 2–3. Claimant also cites a physical therapy record dated May 25, 2016. *Id.* at 3. At that time, Claimant's provider noted that he "is limited in sleeping throughout the night, walking >[1.5] hours, and sitting 5 minutes."[6] [AR, p. 816]. Finally, Claimant cites another physical therapy record dated July 25, 2016 in which Plaintiff reported current pain levels at 3/10 and that after more than 1.5 hours walking, the severity at its worst reaches 7/10. [R. 18, at p. 3] (citing [AR, p. 2042]). Claimant argues that this evidence "show[s] the problems continued into 2016" and is sufficient to establish medical equivalency to the Listing. [R. 18, at p. 3]. As to the latter, the Court disagrees.

---

[6] While the quoted excerpt of the record states that Claimant is limited to "walking > 15. hours," this appears to be a typographical error. Indeed, on the same page of the record, under a section labeled "Problems & Goals," the following is noted, "Chief Complaint: Severity at Worst: 8/10. (After walking>1.5 hours)." [AR, p. 816].

As an initial matter, the Court notes that ALJ Eastham considered much of the evidence Claimant cites in his RFC analysis. This includes that Claimant "reported initial improvement from surgery, he subsequently complained of a return of low back and leg pain and he began using a cane to ambulate again (14F)." [AR, pp. 1598]. ALJ Eastham also noted, "Following surgery, the claimant reported some minor back and leg pain but it was relieved with a steroid pack." *Id.* at 1599. He noted that "[t]here was some decreased strength noted by therapists, not by the medical providers, and it was only slightly/mildly reduced at 4 or 5- out of 5 (16F, 18F, 24F)." *Id.* He noted that "[t]he claimant did present to his lumbar spine specialists using a cane only intermittently, and updated studies from June of 2016 showed a recurrent L4-5 protrusion and scar tissue at L5-S1, causing mild impingement of the nerve root (22F)." *Id.* In addition to this evidence, ALJ Eastham noted that since Claimant's surgery, "[t]he physical findings support his subjective reports of improvement as the providers noted he had a normal gait and he continued to have routinely normal neurologic findings including strength and sensation (12F, 27F)." *Id.* Claimant does not dispute the mitigating evidence that ALJ Eastham described nor does he argue that this evidence is inconsistent with ALJ Eastham's finding that he does not meet or equal the Listing. *C.f. Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 784 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 203 L. Ed. 2d 504, 139 S. Ct. 1148 (2019) (finding that the ALJ was permitted to discredit expert opinion that Claimant met Listing 1.04 based on "other evidence showing [the plaintiff] had, at best, inconsistent back issues," which included that "[s]ome appointment notes do not reference back pain, only reporting [the plaintiff] as having 'normal gait and station,' while others only a short time later mention some pain"); *Davis*, 2019 WL 6208732, at *8 ("[W]hile Davis points to limited evidence in the record of weakness, atrophy, and limited range of motion of spine, he does not explain how these limited findings establishes that he medically equaled Listing 1.04A in the

absence of nerve root compression, neuro-anatomic distribution of pain, and sensory or reflex loss

established by positive straight leg raising testing.").

ALJ Eastham also highlighted long term evidence of improvement, including "records

from 2016 and 2017 indicate the claimant was doing well on his current medication regimen

(27F)." [AR, p. 1599]. ALJ Eastham noted that "[o]utside of chiropractic

treatment, he sought limited treatment for his back pain, including treatment from his neurologist

in 2018 and 2019" and "neurology records from 2019 indicate the claimant has been doing well

and that follow up imaging showed scar tissue but no significant nerve root compression (37F)."

*Id.* In light of the inconsistent evidence dated around the time of his surgery and the longitudinal

evidence showing improvement since then, the medical records from 2015 and 2016 that Claimant

cites might establish "sporadic or intermittent" aggravation in his impairment, but they do not

conclusively establish a level of severity and duration equaling the Listing criteria. *Biestek*, 880

F.3d at 784.

Finally, ALJ Eastham's step three determination is supported by Claimant's own

testimony, including "that he can clean up after dinner, wash dishes, and prepare simple meals. He

grocery shops weekly, but he accompanies his mother because he does not drive." [AR, p. 1598].

This testimony further substantiates the reasonableness of ALJ Eastham's conclusion that

Claimant did not meet or equal the Listing. *See Forrest*, 591 F. App'x at 366 (finding that the

ALJ's factual findings supported his conclusion that the plaintiff could effectively ambulate,

including that the plaintiff "(1) fell while lifting his daughter in Wal–Mart in April 2007, (2) could

walk without a cane in November 2009, and (3) moved furniture down stairs in July 2011"); *Wilson

v. Kijakazi*, No. 4:20-CV-00064-HBB, 2021 WL 4304700, at *8 (W.D. Ky. Sept. 21, 2021)

(finding that ALJ's conclusion that Claimant did not meet Listing 1.04 was supported by

- 19 -

substantial evidence, including inconsistent use of an assistive device for walking, the plaintiff's testimony "that he is able to assist with chores and will go out and go shopping on a 'normal' day," and a function report completed by his mother that "noted that Plaintiff loads the dishwasher, does laundry, mows the lawn, checks the mail, can leave the residence alone, can drive, goes out to eat or to movies with others, visits friends, and that Plaintiff has '[n]o problem walking'").  In sum, ALJ Eastham's discussion in his RFC analysis sufficiently demonstrates that he considered the entire record, resolves any conflicts, and explains how he reached his findings. Additionally, the Court has independently review of the record and finds that ALJ Eastham's step three determination is supported by substantial evidence. Therefore, Claimant has failed to establish reversable error with respect to this challenge.

Finally, Claimant argues that ALJ Eastham erred in finding that Claimant did not lack the ability to ambulate effectively as required under section 1.04C of the Listing. [R. 18, at pp. 2–3]. Specifically, Claimant seizes on ALJ Eastham's reliance on Claimant's one-handed cane use in assessing his ability to effectively ambulate. *Id*. Claimant asserts, "The ability to ambulate effectively is not limited to the inability to use both upper extremities as defined by the ALJ." *Id.* at 3. Claimant contends that ALJ Eastham failed to consider the definition of effective ambulation provided under section 1.00(B)(2)(b) of the Listing. *Id.* Claimant's argument relies on an overly narrow reading of ALJ Eastham's step three analysis. While it is true that ALJ Eastham relied on Claimant's ability to use his quad-cane "with one hand while carrying with the free hand," [AR, p. 1595], he never suggested that use of upper extremities is conclusive of ability to ambulate effectively. Moreover, ALJ Eastham's reference to Claimant's upper extremity limitations indicates that he *did* consider and properly applied 1.00(B)(2)(b), which provides, in part: "Ineffective ambulation is defined generally as having insufficient lower extremity functioning

(see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt A1, § 1.00(B)(2)(b)(1). In fact, this Court recently treated this provision as determinative of ability to effectively ambulate. *Shannon C. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00186-DJH-CHL, 2022 WL 7284554, at *5 (W.D. Ky. July 20, 2022), *report and recommendation adopted sub nom. Cashin v. Comm'r of Soc. Sec.*, No. 3:20-CV-186-DJH-CHL, 2022 WL 4595067 (W.D. Ky. Sept. 30, 2022). In *Shannon C.*, the plaintiff challenged the ALJ's finding at step three that she did not meet or equal Listing 1.02 or 1.03, both of which include inability to ambulate effectively as a criterion. *Id.* at *4. There, the ALJ's entire analysis was two sentences: "The claimant has not established that he was unable to either ambulate effectively or perform fine and gross movements effectively. The record showed the claimant had a normal gait and full range of motion in the left shoulder, with strength only minimally reduced to 5/-5." *Id.* In reviewing the ALJ's finding, the Court concluded,

> the Claimant did not identify specific evidence demonstrating he could meet every element of Listings 1.02 and 1.03. In particular, though Claimant cited to numerous medical records, he cited no evidence that he was unable to ambulate independently "without the use of a hand-held assistive device[ ] that limit[ed] the functioning of *both* upper extremities." *Id.* at § 1.00(B)(2)(b)(1) (emphasis added). He cited evidence that he used a cane, but a cane does not engage both upper extremities as required by the applicable Listings. Without this evidence, Claimant has not raised a substantial question as to whether he met Listings 1.02 and 1.03. Thus, though the ALJ's analysis was inadvisably brief, the undersigned finds that the ALJ did not commit reversible error in his discussion of Listings 1.02 and 1.03.

*Id.* at *5.

Moreover, here, ALJ Eastham clearly did *not* rely solely on this factor in determining that Claimant had not established an inability to ambulate effectively. At step three, ALJ Eastham also stated that inability to ambulate effectively was not supported by "[t]he medical evidence" and

specifically noted, "He has mild strength loss but normal sensation and reflexes, and no evidence of persistent straight leg raise pain." [AR, p. 1595]. Additionally, ALJ Eastham's more detailed discussion of the evidence in his RFC analysis discussed above, including normal gait, strength, and sensation, limited cane use, and performance of various activities of daily life, further substantiates Claimant's ability to ambulate effectively. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt A1, § 1.00(B)(2)(b)(1) ("Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."). Based on the foregoing, the Court finds that ALJ Eastham properly addressed Claimant's ability to ambulate effectively under 1.04C in his step three analysis. Therefore, Claimant has failed to establish reversable error with respect to this challenge.

### C.  Claimant's Step 5 Objection

Claimant challenges ALJ Eastham's finding at step five of the five-step evaluation process. [R. 18, pp. 4–5]. At step five, the ALJ considers whether the claimant's RFC, age, education, and work experience allow him or her to obtain gainful employment. An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c), 416.945(a)(1), 416.946(c), (2021). The ALJ bases his or her determination on all relevant evidence in the case record, including statements from medical sources. 20 C.F.R. §§ 404.1529, 416.929, (2001); 404.1545(a)(1)–(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1527, 416.927, (2021); 20 C.F.R. §§ 404.1529(a), 416.929(a).

Here, in assessing Claimant's RFC, ALJ Eastham considered whether Claimant's medically determinable impairments could reasonably be expected to produce his allegedly disabling symptoms and whether Claimant's allegations about the intensity, persistence and limiting effects were consistent with the record. [AR, p. 1597]. Concerning medically determinable impairments, ALJ Eastham found that "[t]he medical evidence supports the existence of severe degenerative disc disease of the lumbar spine." *Id.* However, ALJ Eastham also found that Claimant's allegations concerning the nature of the symptoms "are not entirely consistent with the medical evidence and other evidence in the record . . . ." *Id.* Based on his review of the record, he concluded:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he may occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs, but he may never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to extreme cold/heat and vibrations from equipment or tools being used to complete tasks, and hazards generally. However, he can have no exposures to unprotected heights or use of or within 5 feet of open moving machine parts. He may never operate any type of motorized vehicle as part of work task. He needs a cane to ambulate to and from workstation and on an occasional basis would be able to carry up to 10 pounds in free hand while ambulating. He can perform simple goal oriented tasks. He may not perform production rate pace tasks and no fast-paced daily quotas. He can understand and follow simple routine rote instructions. He can make simple routine decisions. He can have frequent work related contact with supervisors, coworkers, and the public. He can tolerate frequent changes to the work place setting.

*Id.* at 1596–97.

Claimant raises three challenges to ALJ Eastham's findings. *First*, Claimant argues that ALJ Eastham's RFC analysis did not comport with SSR 96-8p. [R. 18, at p. 4]. SSR 96-8p states that an ALJ's assessment of a claimant's RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and

nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. 34474, 34478 (July 2, 1996). It requires an ALJ's RFC finding to address in a function-by-function evaluation both the exertional and nonexertional capabilities of an individual. *Id.* at 34476–77. Exertional limitations relate to an individual's ability to sit, stand, walk, lift, carry, push, and pull. *Id.* at 34477. Nonexertional limitations relate to an individual's potential postural, manipulative, visual, communicative, and mental limitations and ability to tolerate various environmental factors. *Id.* However, "case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (per curiam); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013).

Here, Claimant argues that ALJ Eastham failed to comply with SSR 96-8p because he "did not provide a narrative on his rejection of the physical therapists [sic] quantified limitations on activities and degree of pain[.]" [R. 18, at p. 5]. Claimant is apparently referring to "[t]he physical therapy discharge summary dated July 25, 2016 [which] limits activity to 6-hours, pain at a 7/10 level after 1.5 hours walking with sitting limited to five minutes."[7] *Id.* at 4. It is slightly misleading that Claimant refers to the walking and sitting limitations and pain assessment as "the physical therapists [sic] quantified limitations," [R. 18, at p. 5], seeing as they were noted on the "Subjective Examination" portion of the discharge summary, which appears to document Claimant's *self-reported* complaints. *See* [AR, p. 2041]. ALJ Eastham did cite the discharge summary twice in his discussion of the medical evidence, *id.* at 1599, but he did not mention the self-reported limitations that Claimant highlights. The Court notes that Claimant does not argue that the physical therapy discharge summary is a medical opinion concerning Claimant's functional limitations nor does he

---

[7] In his objection to ALJ Eastham's RFC determination, Claimant references other purportedly contrary evidence that he believes was not sufficiently addressed. The Court addresses Claimant's argument concerning this evidence *infra* at pages 29–31.

cite any authority providing that ALJ Eastham was required to discuss the discharge summary. "[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x. 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

Here, as was noted above, ALJ Eastham cited the discharge summary twice in his RFC analysis. [AR, p. 1599]. Though he did not explicitly discuss the self-reported limitations therein, ALJ Eastham's decision implicitly resolved any conflict between the discharge summary by discussing other medical evidence related to Claimant's sitting and walking limitations. For example, Claimant's treating neurologist, Dr. Kimithi Doss ("Dr. Doss"), opined that Claimant was limited to sitting *less than* six hours and walking *less than* two hours. [AR, p. 1600]. When considering Dr. Doss's opinion, ALJ Eastham directly rejected these limitations. *Id.* In doing so, ALJ Eastham explained: "claimant has generally shown normal lower extremity strength and sensation and he has reported improvements from treatment such that he is able to sit, stand, and walk throughout the day so long as he has his cane and can alternate positions." *Id.* Additionally, ALJ Eastham expressly considered evidence of Claimant's pain level over time and concluded that "the above RFC provides the most restrictive exertional level, reduced even further to accommodate ongoing leg and low back pain." *Id.* at 1599. The most restrictive exertional level, which ALJ Eastham incorporated into his RFC determination, is sedentary work, which requires standing or walking *up to* two hours and sitting *up to* two hours. *See* 20 C.F.R. §§ 404.1567(a), 404.967(a); SSR 96-9P, 61 Fed. Reg. 34478, 1996 WL 374185, at *6 (July 2, 1996). Given his analysis of Dr. Doss's sitting/walking restrictions, there was no reason for ALJ Eastham to

separately analyze Claimant's self-reported 1.5 hour walking and 5 minute sitting limitations. The Court finds that ALJ Eastham "complied with SSR 96-8p and fully specified [Claimant]'s exertional and nonexertional abilities." *Rudd*, 531 F. App'x at 729. *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) (citations omitted) ("[T]he ALJ complied with the applicable regulations by assessing each of Winslow's work-related limitations that were at issue."). Further, based on its independent review of the record, the Court finds that ALJ Eastham's thorough RFC analysis spanning over five pages sufficiently explains the reasoning for each of the limitations included in the RFC determination. Therefore, Claimant has failed to establish reversable error with respect to this challenge.

*Second*, Claimant argues that ALJ Eastham's analysis did not comport with SSR 96-9p. [R. 18, at 5]. SSR 96-9p governs the implications of when an ALJ finds that an individual can do less than a full range of sedentary work. SSR 96-9p, 61 Fed. Reg. 34478, 1996 WL 374185 (July 2, 1996). It explains that while "[a]n RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare[,] . . . finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.'" *Id*. at 34479. An RFC limiting an individual to less than a full range of sedentary work will usually result in a finding of "disabled" when the limitations significantly erode the available occupational base for such a claimant, and SSR 96-9p provides guidance for "the impact of various RFC limitations and restrictions on the unskilled sedentary occupational base." *Id.* at 34480–81. In such circumstances, the SSR requires,

> The RFC assessment must include a narrative that shows the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in [the] file was considered in the assessment. The individual's maximum remaining capacities to perform sustained work on a regular and continuing

> basis (what he or she can still do 8 hours a day, for 5 days a week, or an equivalent work schedule) must be stated.

> An accurate accounting of an individual's abilities, limitations, and restrictions is necessary to determine the extent of erosion of the occupational base, the types of sedentary occupations an individual might still be able to do, and whether it will be necessary to make use of a vocational resource. The RFC assessment must be sufficiently complete to allow an adjudicator to make an informed judgment regarding these issues.

*Id.* at 34481.

Here, Claimant suggests that ALJ Eastham failed to consider evidence relevant to the erosion of his sedentary occupational base. [R. 18, at p. 5]. This argument is wholly undeveloped and may therefore be deemed waived. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); *Rice v. Comm'r of Soc. Sec.*, 2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion). Moreover, even if the argument were not waived, the Court sees no indication that ALJ Eastham failed to comply with SSR 96-9p. The Sixth Circuit has illustrated an ALJ's compliance with the ruling as follows:

> Pompa contends that she meets the disability standard under Social Security Ruling (SSR) 96–9p. SSR 96–9p states that when an individual is unable to perform substantially all the sedentary occupations listed, the individual will be unable to perform the full range of sedentary work and her occupational base will be eroded by the additional limitations. The ruling provides that the mere inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability. The ruling states that if an individual is unable to perform her past relevant work and the individual is unable to perform the full range of sedentary work, consideration must be given to whether there is other work in the national economy which the individual could perform. That is exactly what occurred in this case. As Ms. Pompa could not perform the full range of sedentary work, the ALJ obtained the testimony of

> a vocational expert. Based on hypothetical questions incorporating Pompa's physical restrictions, the vocational expert testified to approximately 3,200 positions in the Detroit area which Pompa could perform. As the vocational expert's testimony establishes that there are a substantial number of jobs in the economy which Pompa could perform, the ALJ, relying on the vocational expert's testimony, did not commit reversible error in concluding that Pompa was not disabled. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir.1996).

*Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003).

Here, as was discussed above, ALJ Eastham sufficiently explained the reasons for each of the limitations in his RFC analysis. Further, at step five, ALJ Eastham noted that the RFC restricts Claimant to less than the full range of sedentary work. [AR, p. 1603]. He continued,

> To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as [weigher, polisher, and inspector].
>
> The undersigned is mindful that the DOT does not contemplate the use of a cane as posed to the vocational expert. Instead the undersigned relies upon the expert's extensive experience in her field in finding the claimant can perform the above work (33E).

*Id.*

Given the relevant factual findings set forth in his decision, ALJ Eastham's analysis leaves no ambiguity as to whether Claimant would be able to perform the jobs identified by the vocational expert. Therefore, Claimant has failed to establish reversable error with respect to this challenge.

*Third*, Claimant argues that ALJ Eastham reviewed the record selectively, "ignoring the omitted evidence especially that which contradicted the ALJ's conclusion." [R. 18, at p. 6]. As a starting point, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not

indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *see also Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 819 (6th Cir. 2020) (quoting *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005)) ("An ALJ need not cite every piece of evidence in the record and 'an ALJ's failure to cite specific evidence does not indicate it was not considered.'"); *Thacker*, 99 F. App'x at 665 ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). However, the Court examines the record as a whole, including whatever evidence "in the record fairly detracts from its weight," without "resolv[ing] conflicts in evidence or decid[ing] questions of credibility" to determine whether an ALJ's decision is supported by substantial evidence. *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) (quoting in part *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) and citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012)). Thus, where an ALJ has "improperly cherry picked evidence" instead of "more neutrally weighing the evidence," his or her decision is unlikely to be supported by substantial evidence. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009); *see Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("[S]ubstantiality of evidence evaluation does not permit a selective reading of the record.").

Here, Claimant highlights medical records dated between 2016 and 2019 that tend to show aggravated symptoms of his spine impairment. [R. 18, at pp. 4–5]. Plaintiff contends that this evidence undermines the post-surgery improvement that ALJ Eastham described and argues that "[w]hen the record is considered as a whole, it shows a continuous period of disabling symptoms, especially pain, both prior to and subsequent to the January 2015 surgery." *Id.* at 5. As was discussed above, in his RFC analysis, ALJ Eastham thoroughly summarized the relevant medical and other evidence and reasonably concluded that Claimant experienced chronic worsening back

- 29 -

and leg pain which was relieved in part by his 2015 surgery. [AR, p. 1599]. He noted that Claimant "reported initial improvement from surgery, he subsequently complained of a return of low back and leg pain and he began using a cane to ambulate again (14F)." [AR, pp. 1598]. He also noted, "Following surgery, the claimant reported some minor back and leg pain but it was relieved with a steroid pack." *Id.* at 1599. He noted that "[t]here was some decreased strength noted by therapists, not by the medical providers, and it was only slightly/mildly reduced at 4 or 5- out of 5 (16F, 18F, 24F)." *Id.* He noted that "[t]he claimant did present to his lumbar spine specialists using a cane only intermittently, and updated studies from June of 2016 showed a recurrent L4-5 protrusion and scar tissue at L5-S1, causing mild impingement of the nerve root (22F)." *Id.* In addition to this evidence, ALJ Eastham noted that since Claimant's surgery, "[t]he physical findings support his subjective reports of improvement as the providers noted he had a normal gait and he continued to have routinely normal neurologic findings including strength and sensation (12F, 27F)." *Id.* ALJ Eastham granted that "recovery has been slow" and found that his symptoms limited him to sedentary work with additional restrictions. *Id.* There is no indication, nor does Claimant suggest any, that ALJ Eastham's summary of Claimant's medical treatment history is in any way inaccurate. The Court has reviewed the record and finds that ALJ Eastham's summary is entirely substantiated thereby. Moreover, ALJ Eastham did not ignore conflicting evidence. For example, he discussed clinical findings from examination and MRI that document his prognosis over time. These studies showed in 2014 "a disc protrusion at L4-5 and a large disc herniation at L5-S1 causing marked compression of the S1 nerve root," then in 2016, "recurrent L4-5 protrusion and scar tissue at L5-S1, causing impingement of the nerve root," then in 2019, "scar tissue but no significant nerve root compression[.]" *Id.* at 1598–99. He also discussed functional evaluations conducted by medical sources, provided reasons for rejecting the more restrictive limitations, and

in many cases rejecting findings in favor of more restrictive limitations than those that were proposed. *Id.* at 1600–01. Ultimately, ALJ Eastham's "RFC [determination] provides the most restrictive exertional level, reduced even further to accommodate ongoing leg and low back pain." *Id.* at 1599. The Court has independently reviewed the record and finds that it does not fairly detract from ALJ Eastham's decision and therefore cannot conclude that ALJ Eastham failed to satisfy his duty to consider the record as a whole.

At its core, Claimant's challenge to ALJ's purported selective citation to the record is an argument that ALJ Eastham's decision does not meet the substantial evidence standard. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). While, as Claimant emphasizes, there is some evidence in the record that could support the opposite conclusion reached by the ALJ, that is not a proper area of inquiry for this Court. *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman*, 693 F.3d at 714. Ultimately, ALJ Eastham's analysis reaches threshold for substantial evidence, which is "not high." *Biestek*, 139 S. Ct. at 1154 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). Therefore, Claimant has failed to establish reversable error with respect to this challenge.

## IV.    ORDER

For the foregoing reasons,

**IT IS HEREBY ORDERED** as follows:

- 31 -

1. The final decision of the Commissioner is **AFFIRMED**.

2. The Magistrate Judge's Report and Recommendation **[R. 17]** is **ADOPTED** to the extent
   that it is not inconsistent with this Memorandum Opinion and Order.

3. Claimant's Objection to the Report and Recommendation **[R. 18]** is **OVERRULED**.

4. Judgment shall be entered separately.


This the 13th day of January, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY


cc:   Counsel of Record